# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
# AT NASHVILLE
## November 22, 2005 Session

## RONNIE FINCH v. STATE OF TENNESSEE

### Appeal from the Criminal Court for Davidson County
### No. 98-D-2428    Cheryl Blackburn, Judge

---

### No. M2004-02887-CCA-R3-PC - Filed January 31, 2006

---

The petitioner, Ronnie Finch, was convicted by a jury of facilitation of first degree murder, two counts of attempted first degree murder and two counts of aggravated assault.  As a result, the petitioner was sentenced to a total of forty-nine years in incarceration.  The petitioner's convictions and sentence were affirmed by this Court on appeal.  See State v. Frank E. Huey, et al, No. M2000-02793-CCA-R3-CD, 2002 WL 517132 (Tenn. Crim. App. at Nashville, Apr. 5, 2002), perm. app. denied, (Tenn. Oct. 14, 2002).  The petitioner subsequently filed a pro se petition for post-conviction relief, alleging inter alia ineffective assistance of counsel.  After an evidentiary hearing, the post-conviction court denied the petition.  On appeal, the petitioner challenges the post-conviction court's denial of the petition. For the following reasons, the judgment on post-conviction petition is reversed; the judgment of acquittal is entered; and verdicts of guilt are vacated and dismissed.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court is Reversed and Remanded

JERRY L. SMITH, J., delivered the opinion of the court, in which DAVID H. WELLES and DAVID G. HAYES, JJ., joined.

James P. McNamara, Nashville, Tennessee, for the appellant, Ronnie Finch.

Paul G. Summers, Attorney General and Reporter; Mark A. Fulks, Assistant Attorney General; Victor S. Johnson, District Attorney General; and Bret Gunn, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

In March of 2001, the petitioner and two other co-defendants were indicted by the Davidson County Grand Jury for first degree murder, two counts of attempted first degree murder, two counts of aggravated assault, and reckless endangerment.  All three defendants were tried jointly.  At the

conclusion of the jury trial, the petitioner was convicted of facilitation of first degree murder, two counts of attempted first degree murder, and two counts of aggravated assault. After a sentencing hearing, the petitioner was sentenced to forty-nine years for the multiple convictions.

The petitioner appealed, arguing that the evidence was not sufficient to support the convictions and the sentences imposed by the trial court were excessive. The facts supporting the petitioner's underlying convictions were summarized by this Court on direct appeal as follows:

> On May 5, 1998, Jerome Jones was standing on the sidewalk outside his home at 357 Settle Court in Nashville, when Defendant Finch rode by on his bicycle and demanded that Mr. Jones move out of his way. The two argued for several minutes. Mr. Jones testified that during that afternoon he saw Defendant Finch several times outside of his apartment with a gun in his hand.
>
> On May 6, Mr. Jones was watching television in his bedroom when he heard a knock on the apartment door. As he entered the living room, he saw the three Defendants. The Defendants wanted to discuss the events of May 5, and Mr. Jones asked them to accompany him to his bedroom because his girlfriend and her children were in the living room. Defendants Huey and Finch accompanied Mr. Jones into the bedroom where Defendant Huey struck Mr. Jones on the head with a pistol, put the gun to his face, and ordered him outside. As Defendant Huey led Mr. Jones into the living room at gunpoint, Michael White, Mr. Jones' cousin, entered the home. Defendant Huey pointed the gun at Mr. White and then walked out of the house. Once outside the house, Defendant Huey fired once into the air. After Defendant Huey's departure, Defendants Gills and Finch left through the back door.
>
> After the altercation, Mr. Jones left the Settle Court area with Harold Blair, who promised to provide Mr. Jones with a firearm for his protection. Word of the altercation between Mr. Jones and the Defendants quickly spread, and, when Mr. Jones returned to his home that evening, two of his uncles, Ben and Leo White, were waiting. Leo White had a firearm in the trunk of his car that he intended to give Mr. Jones.
>
> As Mr. Jones talked with his uncles, Mr. Blair walked toward Mr. Jones' home where Sharon Sanders, Mr. Jones' girlfriend, and her children stood. While Leo White was opening his trunk, gunfire erupted. Leo White was shot once in the leg. Ben White was shot once in the groin and once in the leg. Medical Examiner Dr. Bruce Levy testified at trial that Ben White bled to death as a result of the two gunshot wounds.
>
> Mr. Jones testified at trial that he, Ben White, and Leo White were all unarmed at the time of the attack, and that the gun in Leo White's trunk was never removed. Mr. Jones also testified that he did not see the attackers. According to Mr.

Jones, the shooting lasted for approximately thirty seconds and there were numerous shots fired. Sherry Stevens, Mr. Jones' aunt, testified that she was aware of the altercation at Mr. Jones' home. Ms. Stevens observed Defendant Gills walking up the street toward Mr. Jones' apartment just prior to the shooting. She also stated that she saw Defendants Huey and Finch coming around the corner of the apartment building at the same time. Ms. Stevens saw Defendant Gills raise a pistol and open fire in the direction of Mr. Jones. Ms. Stevens was unsure whether Defendants Huey and Finch were also armed.

Christopher Works also witnessed the shooting and testified that he saw Defendant Gills standing in the middle of the street and Defendant Huey at the side of the apartment building with a rifle just prior to the time the shooting began. Mr. Works further stated that he did not see any weapons among the group of people standing on and around Mr. Jones' porch, nor did he see Mr. Jones, Ben White, or Leo White with a weapon. Mr. Works' mother, Janice Goff, also testified that from her front porch she saw Defendant Huey fire a rifle in the direction of Mr. Jones' apartment. She testified that she heard many guns being fired, but did not see anyone around Mr. Jones' apartment returning fire.

Sharon Sanders, Mr. Jones' girlfriend, was sitting on her porch when the shooting started. She testified that she saw Defendant Gills in the street pointing a gun at her apartment. She then saw Gills open fire. Ms. Sanders stated that she, Michael White's wife, and several children were all on or around the porch when the shooting started.

Detective Matt Pilcus of the Metro Police Department testified that he was the first officer to arrive on the scene, and he immediately rendered aid to Ben White. Upon arrival Detective Pilcus stopped a blue truck from leaving the scene, but his attention was diverted to Mr. White before he could question the driver. When he returned later, the truck was empty and locked. Detective Pilcus testified that he did not see any weapons in the vicinity of the victims, Leo and Ben White. Crime Scene Investigator Marsha Brown testified that eight 9 millimeter shell casings, one .45 caliber shell casing and one projectile were found in front of Mr. Jones' apartment. At the corner of the apartment building where Defendant Huey had been seen, fourteen 9 millimeter shell casings, two projectiles and three rifle casings were found. One rifle bullet was recovered from Ben White's body at Vanderbilt Hospital shortly before he died.

Tennessee Bureau of Investigation ballistics expert Steve Scott examined the shell casings found at the scene and determined that several different 9 millimeter pistols and at least one Chinese SKS or Russian AK47 assault rifle were used during the shooting. Mr. Scott testified that as many as eleven and as few as eight guns were

used during the shooting.

Defendant Finch contended at trial that he was either not present or was present but did not fire a gun. Defendants Gills and Huey contended at trial that they acted in self-defense or, alternatively, that the shooting was mutual combat. Specifically, Defendants Gills and Huey contended that they did not initiate the gunfight.

Harold Blair testified for Defendant Huey at trial. Mr. Blair stated that he and Mr. Jones were drug dealers, and that he was armed on the night of the shooting. Mr. Blair testified that just prior to the shooting one of Mr. Jones' uncles took a shotgun out of the trunk of a car and cocked it. Mr. Blair observed Defendants Huey and Finch come around the corner of a building with Defendant Huey carrying a rifle. Mr. Blair also saw Defendant Gills in the street with a pistol. According to Mr. Blair, Defendants Huey and Gills opened fire, however, he was unsure whether Defendant Finch had a weapon. Mr. Blair returned fire. Mr. Blair testified that the day after the shooting his apartment was searched by police officers. Drugs and two guns were recovered. Mr. Blair stated that one of the guns was a Chinese SKS or Russian AK47 rifle.

Phillip Bradford, Mr. Jones' upstairs neighbor, also testified for the Defendants and stated that immediately after the shooting he observed four black males running around the back of the building firing guns into the air. Mr. Bradford also stated that he saw several men loading weapons into a blue car in the front of the building. Mr. Bradford's sister-in-law, Michelle Taylor, also lived above Mr. Jones and testified that she saw four armed men fleeing the area after the shooting. She identified Defendants Gills and Finch as two of those four men. Ms. Taylor further stated that after the shooting she saw a woman with long braids come out of the apartment below her, throw a gun into a blue car, and then run back into the apartment.

Frank E. Huey, 2002 WL 517132, at *1-3. On appeal, this Court determined that the evidence was sufficient to support the convictions and that the trial court properly sentenced the petitioner. Further, this Court determined that the trial court erred in taking the petitioner's motion for judgment of acquittal under advisement at the conclusion of the State's proof. However, the petitioner waived the trial court's error by trial counsel not objecting to the court's action and counsel's continued participation in the remainder of the trial by cross-examining a witness called by one of the co-defendants. Id. at *14-15.

Subsequently, the petitioner filed a pro se petition for post-conviction relief. Counsel was appointed and an amended petition was filed. In the petition, the petitioner alleged that trial counsel was "ineffective by not objecting to the trial court taking [the petitioner's] motion for judgment of acquittal under advisement." Further, the petitioner argued that trial counsel was ineffective for

"continuing to participate in the trial," and "not moving for a severance during the defense proof . . . when it became clear that the co-defendant was presenting a defense that was antagonistic to the defense being presented on behalf of [the petitioner]."

## Proof at the Post-conviction Hearing

The post-conviction court held an evidentiary hearing on the petition. At the hearing, the post-conviction court heard testimony from trial counsel. Trial counsel testified that he was an experienced trial attorney when he represented the petitioner. According to trial counsel, the petitioner pursued an alibi defense, while the other two co-defendants relied on theories of self-defense. Trial counsel stated that because of the different defenses that would be presented at trial, he filed a pre-trial severance motion. The motion to sever the petitioner's case was denied, and the joint trial followed. At trial, trial counsel remembered making a motion for judgment of acquittal at the conclusion of the State's case in chief. The trial court took the motion under advisement. Trial counsel admitted that he failed to object when the trial court took the motion under advisement, and stated that his failure to object was not a tactical decision. Trial counsel explained he was unaware of precedent requiring the trial court to rule on the motion and that in order to best advocate on behalf of his client, he would have continued to examine witnesses had the motion been denied. Trial counsel recalled participating in the cross-examination of several witnesses after the trial court took the motion under advisement.

At the conclusion of the testimony and argument, the post-conviction court took the matter under advisement. In a written order, the post-conviction court made the following findings of fact and conclusions of law:

> Petitioner argues that at the close of the State's case against him, it had not made a prima facie case in that it failed to demonstrate Petitioner was at the scene of the crime at the time of the shooting. As such, Petitioner argues trial counsel was ineffective in (1) not objecting to the trial court taking his motion for judgment of acquittal under and [sic] advisement and (2) continuing to participate in the trial when the trial court had not yet ruled on the motion. In addition, Petitioner argues that trial counsel was ineffective because he failed to move for a severance of defendants when during the defense proof one of the co-defendants presented a defense that was antagonistic to Petitioner.
>
> B. Severance Issue
>
> Petitioner's trial counsel, . . . , testified at the evidentiary hearing. [Trial counsel] stated that with Petitioner's approval they pursued an alibi defense and called Petitioner's then-fiancé (wife at the time of the trial) to testify they were together watching television. Prior to the trial, however, [trial counsel] had met with the attorneys for Petitioner's co-defendants regarding their defense; they intended to raise a defense of mutual combat and self-defense.

[Trial counsel] did in fact file a motion to sever on June 18, 1999, which was denied by this Court.

[Trial counsel] did not renew this motion at the trial; however, there was not basis to do so. Simply because defendants may have antagonistic defenses does not entitle them to severance. There was no legitimate basis to sever Petitioner from his co-defendants.

## C. Rule 29 Issue

At the close of the State's case, [trial counsel] made a Rule 29 motion, which the trial court took under advisement. [Trial counsel] testified that in his experience he has never had a judge take a motion for judgment of acquittal under advisement.

As the Court noted at the evidentiary hearing, the Rule 29 issue was brought before the Court of Criminal Appeals. The Court of Appeals stated, in relevant part, as follows:

> Finally, Defendant Finch contends that the trial court erred in taking his motion for judgment of acquittal under advisement. At the end of the State's proof, all three Defendants moved for a judgment of acquittal. The trial court denied Defendants Huey and Gills' motions, but expressed concern regarding the sufficiency of proof regarding Defendant Finch. The State's proof against Defendant Finch consisted of one witness who placed Finch at the scene during the shooting, but stated that he was unarmed. Instead of granting Defendant Finch's motion, the trial court took the motion under advisement.
>
> Our supreme court has clearly stated that "[t]here is no authority in our practice or procedure in a criminal case for the trial judge to take under advisement a motion for a judgment of acquittal made at the conclusion of all the State's proof." Mathis v. State, 590 S.W.2d 449, 453 (Tenn. 1979). At the end of the State's proof, if the evidence is insufficient to support a conviction, upon a defendant's motion, the trial court has no alternative but to direct a verdict in favor of the defendant. Id. It is clear that the trial court erred in taking the Defendant's motion under advisement.

However, the Mathis court also held that

> [w]hen the court overrules or does not act upon a motion for an acquittal made at the conclusion of the State's proof, if counsel is convinced as to the validity of the motion, he or she must then and there take affirmative action to confine the controversy to the proof already presented. He or she should announce that the defendant stands on his motion, will present no proof, disclaims any benefit of any evidence introduced by his codefendant, disavows any detriment, and should state that the evidence presented by the codefendant will not be binding upon him, and he should participate no further in the trial until after conclusion of all the proof.

> Id.

In the present case, the Defendant's counsel did not object to the court's action nor did he stand on his motion. In fact, counsel for Defendant Finch participated in the remainder of the trial by cross-examining a witness called by one of his codefendants. The Defendant's actions have waived the trial court's error.

The strict guidelines as set forth by our supreme court for preserving as error a trial court's denial of or inaction upon a motion for judgment of acquittal leave no room for a plain error analysis. Accordingly, Mathis requires us to find that the Defendant has waived the trial court's error in taking his motion for judgment of acquittal under advisement. This issue is without merit.

Huey, 2002 WL 517132, at *14-15.

At the evidentiary hearing on the post-conviction petition, the trial court admitted it made a mistake but stated that even though it had taken the motion for judgment of acquittal under advisement, it had not intended to grant said motion; instead, it would have denied Petitioner's request. As such, Petitioner was not prejudiced by the fact trial counsel did not object to the court's decision nor was he prejudiced by the fact counsel continued to participate in the proceedings.

Within the larger ground of ineffective assistance of counsel, the Petitioner [lists] several [grounds] related to that alleged ineffectiveness and has also alleged he received an unfair trial; however, he has failed to demonstrate that he suffered any

-7-

prejudice as a result of the alleged ineffective assistance. Accordingly, this Court finds the issues contained within the Petitioner's ground for relief to be without merit.

The petitioner subsequently appealed the post-conviction court's dismissal of the petition for post-conviction relief. On appeal, the petitioner again argues that trial counsel was ineffective in his handling of the motion for judgment of acquittal and for failing to renew the motion for a severance at trial.

## Post-Conviction Standard of Review

To sustain a petition for post-conviction relief, a defendant must prove his or her factual allegations by clear and convincing evidence at an evidentiary hearing. See Tenn. Code Ann. § 40-30-110(f); Momon v. State, 18 S.W.3d 152, 156 (Tenn. 1999). The post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). During our review of the issues raised, we will afford those findings of fact the weight of a jury verdict, and this Court is bound by the trial court's findings unless the evidence in the record preponderates against those findings. See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997); Alley v. State, 958 S.W.2d 138, 147 (Tenn. Crim. App. 1997). This Court may not reweigh or re-evaluate the evidence, nor substitute its inferences for those drawn by the post-conviction court. See State v. Honeycutt, 54 S.W.3d 762, 766 (Tenn. 2001). All questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. See Momon, 18 S.W.3d at 156; Henley, 960 S.W.2d at 578-79. However, the post-conviction court's conclusions of law are reviewed under a purely de novo standard with no presumption of correctness. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

## Ineffective Assistance of Counsel

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, the petitioner bears the burden of showing that (a) the services rendered by trial counsel were deficient and (b) that the deficient performance was prejudicial. See Powers v. State, 942 S.W.2d 551, 558 (Tenn. Crim. App. 1996). In order to demonstrate deficient performance, the petitioner must show that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). In order to demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. See Strickland v. Washington, 466 U.S. 668, 694 (1984). "Because a petitioner must establish both prongs of the test to prevail on a claim of ineffective assistance of counsel, failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." Henley, 960 S.W.2d at 580.

As noted above, this Court will afford the post-conviction court's factual findings a presumption of correctness, rendering them conclusive on appeal unless the record preponderates against the court's findings. See id. at 578. However, our supreme court has "determined that issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact . . . ; thus, [appellate] review of [these issues] is de novo" with no presumption of correctness. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999).

Furthermore, on claims of ineffective assistance of counsel, the petitioner is not entitled to the benefit of hindsight. See Adkins v. State, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). This Court may not second-guess a reasonably-based trial strategy, and we cannot grant relief based on a sound, but unsuccessful, tactical decision made during the course of the proceedings. See id. However, such deference to the tactical decisions of counsel applies only if counsel makes those decisions after adequate preparation for the case. See Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

A.  Failure to Properly Proceed on the Motion for Judgment of Acquittal

On appeal, the petitioner first claims that his trial counsel was deficient in failing to preserve appellate review of his motion for judgment of acquittal. Specifically, the petitioner complains that trial counsel did not object when the trial court took the motion under advisement and continued to participate in the trial when the trial court had not ruled on the motion. The petitioner contends that as a result of trial counsel actions, he "lost the ability to appeal the trial court's ultimate denial of his motion for judgment of acquittal." Further, the petitioner argues that the State's evidence alone was insufficient to sustain his convictions and had trial counsel stood on the motion by refusing to participate in the remainder of the trial, the evidence presented by one of the co-defendants which implicated the petitioner would not have been considered. The State disagrees, arguing that any ineffectiveness by trial counsel was harmless because the petitioner was not prejudiced by trial counsel's decision to continue with the defense.

According to our opinion on direct appeal, all three defendants moved for a judgment of acquittal in accordance with Tennessee Rule of Criminal Procedure 29 at the close of the State's proof. The trial court immediately denied the motions of defendants Huey and Gills, but "expressed concern regarding the sufficiency of the proof regarding [the petitioner]." Frank E. Huey, 2002 WL 517132, at *14. The State's proof against the petitioner consisted of only one witness who placed the petitioner at the scene during the shooting, but stated that he was unarmed. There was additional evidence indicating that the petitioner was in a verbal altercation with one of the victims on the day prior to the shooting. Because of the trial court's concern over the sufficiency of the evidence as to the petitioner, the trial court decided to take the motion under advisement. The trial proceeded and each of the co-defendants presented witnesses in their defense. The petitioner presented no proof; his defense centered around the assertion that he was not present at the time of the shooting. The co-defendants maintained that they acted in self-defense. As part of their proof, one of the co-defendants called Michelle Taylor who testified that she not only saw the petitioner at the scene, but

saw the petitioner at the scene with a weapon. Trial counsel for the petitioner participated in the trial after the State rested, cross-examining at least one witness during the defense proof.

At the post-conviction hearing, trial counsel wholly admitted that he was unaware of the Mathis decision, stating:

> I had never confronted that particular situation before and I wasn't aware of the case law which clearly indicated that I should stand on my motion and not participate further, object to the Trial Court's ruling taking it under advisement because they do not have authority to do so, according to case law. The Court should rule on the motion at that time.

Further, trial counsel admitted that his failure to object and failure to stand on the motion was "not a tactical decision" on his part. Trial counsel recalled that defense witness Michelle Taylor was the first witness to actually place the petitioner at the scene of the shooting with a weapon.

Our first step in the analysis of the post-conviction court's denial of the petition is to determine whether the services rendered by trial counsel were deficient either at trial or on appeal. Looking at the record it is unclear whether the trial judge found counsel's representation deficient, however the judge commented that she would have denied the motion for judgment of acquittal even if she had not taken the motion under advisement. However, trial counsel's failure to object to the trial court's taking of the motion under advisement and failure to stand on the motion as required by Mathis, effectively waived the issue of the denial of the motion for judgment of acquittal on appellate review. Trial counsel's actions cannot be viewed as a tactical decision where counsel was unaware of the legal situation in which he and his client found themselves. Thus, we conclude that trial counsel delivered deficient performance at trial.

However, our analysis of the issue of ineffective assistance of counsel does not end with the determination that counsel was deficient in his trial representation. In order for the petitioner to prevail on his claim, he must also establish that he was prejudiced by counsel's deficient performance. As stated above, the petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. See Strickland v. Washington, 466 U.S. 668, 694 (1984). We take the trial judge at her word that counsel's performance did not prejudice the petitioner at trial because the trial judge would have denied the motion for judgment of acquittal had she ruled on it in a timely fashion. However, this case is unusual because counsel's deficient trial representation did not create prejudice until the case reached the appellate level. Therefore, in this case, in order to establish a reasonable probability that the result of the proceeding would have been different, we must determine whether at the close of the State's proof the evidence was indeed insufficient to convict the petitioner. We determine that at the close of the State's proof, the evidence was not sufficient to convict the petitioner of attempted

first degree murder, facilitation of first degree murder, and/or aggravated assault.[1] At that point in the trial, the only evidence linking the petitioner to the crimes was physical presence. Mere presence at the scene of a crime is not sufficient evidence to convict the petitioner of the crimes as charged. Because the evidence presented up to the conclusion of the State's proof was not sufficient to convict the petitioner of the crimes as charged, he has shown prejudice resulting from trial counsel's failure to object to the trial court's taking the motion for judgment of acquittal under advisement and counsel's continued participation in the trial.[2] As the petitioner has satisfied both prongs of Strickland, we conclude that the petitioner received the ineffective assistance of counsel. Because the evidence was not sufficient to convict the petitioner of attempted first degree murder, facilitation of first degree murder, and/or aggravated assault at the conclusion of the State's proof, this Court would have reversed the trial court's decision on the motion for judgment of acquittal had we not been precluded from doing so on account of counsel's mistake. Accordingly, we now grant the motion for judgment of acquittal that should have been granted at the conclusion of the State's proof, and dismiss the charges against the petitioner.

### Conclusion

For the foregoing reasons, the judgment of the post-conviction court is reversed; judgment of acquittal is entered and petitioner's convictions and sentences are vacated.

_____
JERRY L. SMITH, JUDGE

---

[1] Regardless of our determination herein, our analysis of the sufficiency of the evidence on direct appeal was correct. On direct appeal, we were able to consider the additional evidence presented by the co-defendants which placed the petitioner at the scene of the crime with a weapon.

[2] The petitioner also argues that trial counsel was ineffective for failing to renew his motion for a severance during trial. Although we have already determined that counsel was ineffective on other grounds, we feel compelled to note that trial counsel was not ineffective for failing to renew the motion for severance. Trial counsel filed a pretrial motion for severance which was denied. Whether a severance should be granted is a matter entrusted to the sound discretion of the trial court, and a reviewing court may not disturb the trial court's ruling absent an abuse of discretion that resulted in clear prejudice to the defendant. See State v. Hutchison, 898 S.W.2d 161, 166 (Tenn. 1994). Antagonistic defenses are not prejudicial per se and do not necessarily warrant severance. State v. Goswell, 62 S.W.3d 740 (Tenn. Crim. App. 2001). The petitioner failed to establish the existence of any basis for trial counsel to renew the motion to sever. This issue is without merit.